**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No: 1:23-cv995

JONATHAN TRUSTY, on behalf of himself and all others similarly situated,
MARIE NETROSIO, on behalf of herself and all others similarly situated, and
MICHAELA MUJICA-STEINER on behalf of herself and all others similarly situated,

      Plaintiffs,

v.

REVENTICS, LLC, a Delaware Limited Liability Company, and
REGIONAL ONE HEALTH, a Tennessee Non-Profit Corporation,

      Defendants.

---

**CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

---

      Plaintiffs Jonathan Trusty, Marie Netrosio, and Michaela Mujica-Steiner, individually and on behalf of the Classes defined below of similarly situated persons ("Plaintiffs"), allege the following against Reventics, Inc. ("Reventics") and Regional One Health ("Regional One") (collectively, Reventics and Regional One are "Defendants") based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation by Plaintiffs' counsel and review of public documents.

**INTRODUCTION**

      1.    Plaintiffs bring this class action against Defendants for their failure to properly secure and safeguard Plaintiffs' and other similarly-situated patients' names, addresses, dates of birth, driver's license numbers, medical information, and other sensitive medical records from hackers.

2.      Reventics, based in Greenwood Village, Colorado, is a technological company that provides electronic platforms for use by physicians. Reventics was founded in 2016.

3.      Regional One is one of the medical providers for which Reventics provides services. Regional One has various locations in Memphis, Tennessee. Regional One has existed in some form since the early 1800s. Plaintiff Trusty utilized Regional One for medical services during 2021 and 2022.

4.      On information belief, in February and March 2023, Reventics mailed out data breach letters ("Data Breach Notice" or "Notice") to individuals whose information was compromised as a result of what Reventics referred to as "a data security incident" or a "cyber-attack."

5.      Based on the Notice sent by Reventics, on December 15, 2022, Reventics "detected certain irregularities in its systems, including a cyber-intruder who encrypted and potentially accessed information on Reventics' servers." In response, Reventics claims that it "engaged an international cybersecurity and forensic consulting firm to investigate and assess the cyber-attack." That investigation determined on or about December 27, 2022, that an unauthorized person had acquired personal information from Reventics' systems (the "Data Breach").

6.      Information compromised in the Data Breach included highly sensitive data that represents a gold mine for data thieves. This includes names, addresses, dates of birth, driver's license numbers, and medical information (collectively, the "Private Information") and includes personally identifiable information ("PII") and protected health information ("PHI") as defined by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") that Defendants collected and maintained.

2

7.     Armed with the Private Information accessed in the Data Breach and a head start, a data thief could commit a variety of crimes including, *e.g.*, using Class Members' names to obtain medical services, using Class Members' information to obtain government benefits, and opening new financial accounts in Class Members' names.

8.     Therefore, Plaintiffs and Class Members have suffered ascertainable losses in the form of the loss of the benefit of their bargain, out-of-pocket expenses, and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach.

9.     Plaintiffs bring this class action lawsuit to address Reventics' inadequate safeguarding of Class Members' Private Information that it collected and maintained.

10.     The potential for improper disclosure of Plaintiffs' and Class Members' Private Information was a known risk to Reventics, and thus they were on notice that failing to take necessary steps to secure the Private Information left that Private Information vulnerable to an attack.

11.     Upon information and belief, Defendants and their employees failed to properly monitor the computer network and systems that housed the Private Information.

12.     Plaintiffs' and Class Members' identities are now at risk because of Defendants' negligent conduct, as the Private Information, PII, and PHI that Defendants collected and maintained is now likely in the hands of data thieves and unauthorized third-parties.

13.     Plaintiffs seeks to remedy these harms on behalf of themselves and all similarly situated individuals whose Private Information was accessed and/or compromised during the Data Breach.

14.     Plaintiffs seek remedies including, but not limited to, compensatory damages, reimbursement of out-of-pocket costs, and injunctive relief including improvements to Reventics' data security systems, future annual audits, and adequate credit monitoring services funded by Defendants.

## PARTIES

15.     Plaintiff Jonathan Trusty is, and at all times mentioned herein was, an individual citizen of the State of Tennessee residing in the City of Arlington.

16.     Plaintiff Marie Netrosio is, and at all times mentioned herein was, an individual citizen of the State of New York residing in the City of Tuckahoe.

17.     Plaintiff Michaela Mujica-Steiner is, and at all times mentioned herein was, an individual citizen of the State of California residing in the City of Ojai.

18.     Defendant Reventics is a revenue cycle management company established in 2016 and located in Greenwood Village, Colorado.

19.     Defendant Regional One is a healthcare provider whose origins date back to 1829 with multiple locations in Memphis, Tennessee. Plaintiff Trusty utilized Regional One for healthcare services.

## JURISDICTION AND VENUE

20.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million exclusive of interest and costs. Upon information and belief, the number of class members is well over 100, many of whom have different citizenship from one or both Defendants. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

21.     This Court has jurisdiction over Defendants because Reventics operates in and has its principal place of business in this District. Upon information and belief, Reventics also maintained the Private Information subject to the Data Breach—which was collected by Regional One—in this District.

22.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) because Defendant Reventics is located here and a substantial part of the events giving rise to this action occurred in this District.

## DEFENDANTS COLLECT HIGHLY SENSITIVE INFORMATION

23.     Regional One is a medical provider located in Memphis, Tennessee. With origins dating back to 1829, Regional One includes a medical center, an outpatient center, a surgery center, a rehabilitation hospital, an extended care hospital, a center for high-risk pregnancies, a cancer center, and various primary care offices and pharmacies. Regional One employs approximately 1,800 people and generates nearly $2 billion in annual revenue.

24.     Reventics is a revenue cycle management company established in 2016, with its central location in Greenwood Village, Colorado. Reventics is incorporated in the state of New York. Reventics is a business associate of Regional One.

25.     As a condition of receiving medical services, Regional One requires that its patients entrust it with highly sensitive PII and PHI. In the ordinary course of receiving services, patients are required to provide sensitive personal and private information such as names, dates of birth, addresses, driver's license numbers, and sensitive medical information, among other things.

26.     In its notice regarding Patient Rights and Privacy, Regional One says that it "values the privacy of our patients' health information" and that it considers [PHI] about our patients to be

private, and we carefully protect it as such."[1] Regional One also describes the limited circumstances when it shares patient health information and says that it will otherwise "not use or disclose medical information about patients without authorization."[2]

27.    Regional One also maintains a Joint Notice of Privacy Practices that covers Regional One and its affiliates.[3] The Notice of Privacy Practices begins immediately under the heading "OUR PLEDGE TO YOU" where Regional One says that its "greatest concerns are your health and privacy" and that it is "committed to using and disclosing your health information responsibly."[4]  Regional One acknowledges that under HIPAA, it is required to maintain the privacy of PHI.[5]

28.    Regional One also commits to providing "notification if we discover a breach of unsecured PHI unless there is a demonstration, based on a risk assessment, that there is a low probability that the PHI has been compromised."[6]  Given that Regional One posted on its website a notice to its customers regarding the Data Breach, it appears that Defendants have determined that there is more than a low probability that patients' PHI has been compromised.

---

[1] *See* Regional One Patient Rights and Privacy, https://www.regionalonehealth.org/patient-rights-and-privacy/ (last visited Apr. 14, 2023).

[2] *Id.*

[3] *See* Regional One Joint Notice of Privacy Practices, www.regionalonehealth.org/wp-content/uploads/2021/04/Notice-of-Privacy_041921-Final.English.pdf?x50475

[4] *Id.*

[5] *Id.*

[6] *Id.*

29.    Regional One also informs patients in its Joint Notice of Privacy Practices that its patients have a "Right to Be Notified of a Breach," saying that "[i]f a breach occurs and it poses a significant risk of financial reputation, or other harm, Regional One Health is required to notify you in writing."[7]

30.    Although Regional One does not specifically mention in its privacy policies the third-parties that it entrusts with patient information, Regional One does generally indicate that "[y]our PHI may be used and disclosed to provide or manage your healthcare and related services."[8]

31.    On information and belief, the aforementioned Regional One privacy policies apply to patient PII and PHI that Regional One shares with Reventics.

32.    On information and belief, Regional One provides each of its patients with a copy of its privacy policies at the time they receive services from Regional One.  In doing so, Regional One enters into a binding contract with each of its patients.

33.    Regional One uses Private Information from patients to provide medical and healthcare-related services to patients. Reventics acts as Regional One's agent in maintaining this Private Information.

34.    On information and belief, pursuant to the HIPAA Privacy Rule, prior to Reventics receiving patient information from Regional One, the two Defendants had to enter into a contract whereby Reventics promised to maintain any information Regional One provided to it in the same level of confidence as Regional One would be required to do under HIPAA.  This makes Plaintiff

---

[7] *Id.*

[8] *Id.*

Trusty a third-party beneficiary of the agreement between the Defendants. On information and belief, the same is true with regard to Plaintiffs Netrosio and Mujica-Steiner and the healthcare providers they visited that utilized Reventics.

35.     By obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class Members' Private Information, Reventics assumed legal and equitable duties and knew or should have known that they were responsible for protecting Plaintiffs' and Class Members' Private Information from disclosure.

36.     Plaintiffs and Class Members have taken reasonable steps to maintain the confidentiality of their Private Information.

37.     Plaintiffs and Class Members relied on Defendants to keep their Private Information, PII, and PHI confidential and securely maintained and to only make authorized disclosures of this information.

## DEFENDANTS' DATA BREACH AND NOTICE

38.     Plaintiff Trusty was a patient of Regional One. As part of providing medical services to Plaintiff Trusty, Regional One collected, *inter alia*, Plaintiff Trusty's name, address, date of birth, medical record number, patient account number, driver's license, healthcare provider information, health plan information, clinical data, dates of service, treatment costs, prescription medications, and codes to identify medical services and procedures received. On information and belief, Plaintiffs Netrosio and Mujica-Steiner provided the same information to their medical providers which shared that information with Reventics.

39.     According to Defendants, on or about December 15, 2022, Reventics detected unusual activity on its computer systems through which it eventually learned of unauthorized

access whereby an unauthorized person or persons gained access to patient information. Through this "data security incident," a cyber-intruder accessed highly sensitive PII and PHI, including patient names, addresses, dates of birth, driver's licenses, and medical and health insurance information.

40.    On or about February 14, 2023, Regional One posted a notice of the Data Breach on its website blog.[9]

41.    On or about February 24, 2023, Reventics began to notify patients of "healthcare . . . providers where you have received care" that its investigation had identified that their Private Information, PII, and PHI had been breached. The Data Breach Notice to Plaintiffs stated that the PII and PHI that was stolen included the following: names, addresses, dates of birth, medical record numbers, patient account numbers, driver's licenses, healthcare provider information, health plan information, clinical data, dates of service, treatment costs, prescription medications, and codes to identify medical services and procedures received.

42.    The Data Breach Notice continued with sections entitled "What we are doing," "What you can do," and "For more information." The "What we are doing" section informed impacted individuals that Reventics had notified stakeholders and that it had retained a cybersecurity and forensics consultant to investigate the nature and scope of the breach. Reventics also offered impacted individuals one year of credit monitoring, but impacted individuals would have to affirmatively sign up for that on a specific website using an enrollment code provided in the Data Breach Notice. Other than offering one year of credit monitoring if individuals

_____

[9] *See* https://www.regionalonehealth.org/blog/2023/02/14/reventics-experiences-data-security-incident/ (last visited Apr. 14, 2023).

affirmatively enroll online and providing a phone number that victims could call if they "have any questions," Reventics, and for that matter, Regional One, offered no other substantive steps to help victims like Plaintiffs and Class Members to protect themselves, including with regard to their health, medical, and insurance information.

43.     On information and belief, the Data Breach Notice was a similar generic letter sent to all Class Members affected by the Data Breach.

44.     Defendants had and have obligations created by contract, industry standards, common law, and representations made to Plaintiffs and Class Members to keep their Private Information confidential and to protect it from unauthorized access and disclosure.

45.     Plaintiffs and Class Members provided their Private Information to Regional One with the reasonable expectation and mutual understanding that Defendants would comply with their obligations to keep such information confidential and secure from unauthorized access.

46.     Defendants' data security obligations were particularly important given the substantial increase in cyberattacks, especially concerning medical information, in recent years.

47.     Defendants knew or should have known that their electronic records would be targeted by cybercriminals.

**DATA BREACHES IN HEALTHCARE AND THE DISRUPTION THEY CAUSE**

48.     According to the Ponemon Institute and Verizon Data Breach Investigations Report, the health industry experiences more data breaches than any other sector.[10] Regular PII

---

[10] *Data Breaches: In the Healthcare Sector*, Center for Internet Security, *available at* https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited Apr. 14, 2023).

can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[11] However, PHI can sell for as much as $363 according to the Infosec Institute.[12] This is because one's personal health history cannot be changed unlike credit card information.

49.    PHI has increased value because criminals can use it to target victims with frauds and scams that take advantage of the victim's medical conditions or victim settlements. It can also be used to create fake insurance claims, allowing for the purchase and resale of medical equipment. Some criminals use PHI to illegally gain access to prescriptions for their own use or resale.

50.    Because of the value of its data, the medical industry has experienced disproportionately higher numbers of data theft events than other industries. This is well known in the healthcare industry.

51.    Cyberattacks and data breaches at healthcare entities like Defendants are especially problematic because they can negatively impact the overall daily lives of patients affected by the attack.

52.    Researchers have found that among medical service providers that experience a data security incident, the death rate among patients increased in the months and years after the incident.[13] Researchers have also found that at medical service providers that experienced a data

---

[11] *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends (Oct. 16, 2019), *available at* https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/ (last visited Apr. 14, 2023).

[12] *Data Breaches: In the Healthcare Sector*, Center for Internet Security, *available at* https://www.cisecurity.org/insights/blog/data-breaches-in-the-healthcare-sector (last visited Apr. 14, 2023).

[13] *See* Nsikan Akpan, *Ransomware and Data Breaches Linked to Uptick in Fatal Heart Attacks*, PBS (Oct. 24, 2019), https://www.pbs.org/newshour/science/ransomware-and-other-data-breaches-linked-to-uptickin-fatal-heart-attacks (last visited Apr. 14, 2023).

security incident, the incident was associated with an overall deterioration in timeliness and patient outcomes.[14]

## DEFENDANTS FAILED TO COMPLY WITH FTC GUIDELINES

53.     The Federal Trade Commission ("FTC") has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

54.     In October 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal information that they keep, properly dispose of personal information that is no longer needed, encrypt information stored on computer networks, understand their network's vulnerabilities, and implement policies to correct any security problems. The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs, monitor all incoming traffic for activity indicating someone is attempting to hack into the system, watch for large amounts of data being transmitted from the system, and have a response plan ready in the event of a breach.

55.     The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, use industry-tested methods for security, monitor for suspicious activity

---

[14] *See* Sung J. Choi, *et al.*, *Data Breach Remediation Efforts and Their Implications for Hospital Quality*, 54 Health Services Research 971, 971-980 (2019). Available at https://onlinelibrary.wiley.com/doi/full/10.1111/1475-6773.13203 (last visited Apr. 14, 2023).

on the network, and verify that third-party service providers have implemented reasonable security measures.

56.    The FTC has brought enforcement actions against entities for failing to adequately and reasonably protect data by treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential data as an unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

57.    On information and belief, Defendants failed to properly implement basic data security practices. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to PII and PHI constitutes an unfair act or practice prohibited by Section 5 of the FTCA.

58.    Defendants were at all times fully aware of their obligations to protect the PII and PHI of patients.

59.    Defendants knew or should have known of the risks they faced as medical entities and should have strengthened their data systems accordingly. Defendants were put on notice of the substantial and foreseeable risk of harm from a data breach yet they failed to properly prepare for that risk.

### DEFENDANTS FAILED TO COMPLY WITH INDUSTRY STANDARDS

60.    As noted above, experts studying cybersecurity routinely identify businesses as being particularly vulnerable to cyberattacks because of the value of the PII which they collect and maintain.

61.    Some industry best practices that should be implemented by entities like Defendants include but are not limited to: educating all employees, strong password requirements, multilayer security including firewalls, anti-virus and anti-malware software, encryption, multi-factor authentication, backing up data, and limiting which employees can access sensitive data. Upon information and belief, Defendants failed to follow some or all of these industry best practices.

62.    Other best cybersecurity practices that are standard in the industry include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protecting physical security systems; and training staff regarding these points. Upon information and belief, Defendants failed to follow these cybersecurity best practices, including failure to train its staff.

63.    Upon information and belief, Defendants failed to meet the minimum standards of any of the following frameworks: the NIST Cybersecurity Framework Version 1.1 (including without limitation PR.AC-1, PR.AC-3, PR.AC-4, PR.AC-5, PR.AC-6, PR.AC-7, PR.AT-1, PR.DS-1, PR.DS-5, PR.PT-1, PR.PT-3, DE.CM-1, DE.CM-4, DE.CM-7, DE.CM-8, and RS.CO-2), the HIPAA Security Rule and Breach Notification Rule, and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness. Upon information and belief, Defendants failed to comply with these accepted standards, thereby opening the door to the cyber incident and causing the Data Breach.

## **DEFENDANTS' SECURITY OBLIGATIONS AND ITS VIOLATIONS OF HIPAA**

64.     Defendants breached their obligations to Plaintiffs and Class Members and/or were otherwise negligent and reckless because they failed to properly maintain and safeguard their computer systems and data.

65.     HIPAA requires covered entities to protect against reasonably anticipated threats to the security of sensitive patient health information. Covered entities must implement safeguards to ensure the confidentiality, integrity, and availability of PHI. Safeguards must include physical, technical, and administrative components.

66.     Title II of HIPAA contains what are known as the Administrative Simplification provisions. 42 U.S.C. §§ 1301, *et seq*. These provisions require, among other things, that the Department of Health and Human Services ("HHS") create rules to streamline the standards for handling the types of data that Defendants left unguarded. The HHS subsequently promulgated multiple regulations.

67.     Cyberattacks are considered a breach under the HIPAA Rules because a breach under the HIPAA Rules is defined as "the acquisition, access, use, or disclosure of PHI in a manner not permitted under the [HIPAA Privacy Rules] which compromises the security or privacy of the PHI." 45 C.F.R. 164.40.10.

68.     Defendants' unlawful conduct includes, but is not limited to, the following acts and/or omissions:

        a.  Failing to maintain an adequate data security system to reduce the risk of data breaches and cyberattacks;

        b.  Failing to adequately protect patients' Private Information;

c.  Failing to properly monitor their own data security systems for existing intrusions;

d.  Failing to sufficiently train their employees regarding the proper handling of PII and PHI;

e.  Failing to fully comply with FTC guidelines for cybersecurity in violation of Section 5 of the FTCA;

f.  Failing to ensure compliance with HIPAA security standard rules by their workforces in violation of 45 C.F.R. § 164.306(a)(4);

g.  Failing to render the electronic PHI they maintained into unusable, unreadable, or indecipherable form to unauthorized individuals, as they had not encrypted the electronic PHI as specified in the HIPAA Security Rule by "the use of an algorithmic process to transform data into a form in which there is a low probability of assigning meaning without use of a confidential process or key" (45 CFR § 164.304's definition of "encryption"); and

h.  Failing to adhere to industry standards for cybersecurity.

69.    Upon information and belief, as a result of computer systems in need of security upgrades, inadequate procedures for handling emails containing viruses or other malignant computer code, and/or employees who opened files containing the virus or malignant code that perpetrated the cyberattack, Reventics negligently and unlawfully failed to safeguard Plaintiffs' and Class Members' Private Information.

70.    On information and belief, the Data Breach resulted from a combination of insufficiencies that demonstrate that Defendants failed to comply with safeguards mandated by HIPAA regulations.

71.    Accordingly, as outlined below, Plaintiffs' and Class Members' lives were severely disrupted. What's more, they now face an increased risk of fraud and identity theft. Plaintiff Trusty and other Class Members also lost the benefit of the bargain they made with Regional One.

### DATA BREACHES, FRAUD, AND IDENTITY THEFT

72.    The FTC hosted a workshop to discuss "informational injuries" which are injuries that consumers suffer from privacy and security incidents, such as data breaches or unauthorized disclosure of data.[15] Exposure of personal information that a consumer wishes to keep private may cause both market and non-market harm to the consumer, such as the ability to obtain or keep employment. Consumers' loss of trust in e-commerce also deprives them of the benefits provided by the full range of goods and services available which can have negative impacts on daily life.

73.    Any victim of a data breach is exposed to serious ramifications regardless of the nature of the data. Indeed, the reason why criminals steal information is to monetize it. They do this by selling the spoils of their cyberattacks on the black market to identity thieves who desire to extort and harass victims or take over victims' identities in order to engage in illegal financial transactions under the victims' names. Because a person's identity is akin to a puzzle, the more

---

[15] *FTC Information Injury Workshop, BE and BCP Staff Perspective,* Federal Trade Commission, (October 2018), *available at* https://www.ftc.gov/system/files/documents/reports/ftc-informational-injury-workshop-be-bcp-staff-perspective/informational_injury_workshop_staff_report_-_oct_2018_0.pdf (last visited Apr. 14, 2023).

accurate pieces of data an identity thief obtains about a person, the easier it is for the thief to take on the victim's identity or otherwise harass or track the victim. For example, armed with just a name and date of birth, a data thief can utilize a hacking technique referred to as "social engineering" to obtain even more information about a victim's identity, such as a person's login credentials or Social Security number. Social engineering is a form of hacking whereby a data thief uses previously acquired information to manipulate individuals into disclosing additional confidential or personal information through means such as spam phone calls and text messages or phishing emails.

74.     The FTC recommends that identity theft victims take several steps to protect their personal and financial information after a data breach, including contacting one of the credit bureaus to place a fraud alert on their account (and an extended fraud alert that lasts for 7 years if someone steals the victim's identity), reviewing their credit reports, contacting companies to remove fraudulent charges from their accounts, placing a freeze on their credit, and correcting their credit reports.[16]

75.     Identity thieves use stolen personal information such as Social Security numbers for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank/finance fraud.

76.     Identity thieves can also use Social Security numbers to obtain an official identification card in the victim's name but with the thief's picture, use the victim's name and Social Security number to obtain government benefits, or file a fraudulent tax return using the victim's information. In addition, identity thieves may receive medical services in the victim's

---

[16] *See IdentityTheft.gov,* Federal Trade Commission, *available at* https://www.identitytheft.gov/Steps (last visited Apr. 14, 2023).

name, rent a house, or and even give the victim's personal information to police during an arrest resulting in an arrest warrant being issued in the victim's name.

77.    A study by the Identity Theft Resource Center[17] shows the multitude of harms caused by fraudulent use of PII:



78.    Moreover, the value of Private Information is axiomatic. The consequences of cyberthefts include heavy prison sentences. The fact that identity thieves attempt to steal identities notwithstanding these possible heavy prison sentences illustrates beyond a doubt that Private Information has considerable market value.

79.    Theft of medical-related PHI is particularly troubling and can result in medical identity theft, where a thief uses the victim's information to see a doctor, get prescription drugs,

---

[17] Steele, Jason, *Credit Card and ID Theft Statistics*, CreditCards.com (October 23, 2017), *available at* https://www.creditcards.com/credit-card-news/credit-card-security-id-theft-fraud-statistics-1276/ (last visited Apr. 14, 2023).

buy medical devices, submit insurance claims, or get other medical care.[18] If the thief's health information is mixed with the victim's health information, it can negatively impact the victim's health insurance benefits and credit.

80.     Drug manufacturers, medical device manufacturers, pharmacies, hospitals, and other healthcare service providers often purchase PII and PHI on the black market for the purpose of target marketing their products and services to the physical maladies of the data breach victims themselves. Insurance companies purchase and use wrongfully-disclosed PHI to adjust their insureds' medical insurance premiums.

81.     It must also be noted that there may be a substantial time lag between when Private Information and/or financial information is stolen and when it is used. According to the U.S. Government Accountability Office, which conducted a study regarding data breaches:[19]

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.

82.     Private Information is such a valuable commodity to identity thieves that once the information has been compromised, criminals often trade the information on the "cyber black market" for years.

---

[18] *What To Know About Medical Identity Theft*, Federal Trade Commission (May 2021), *available at* https://consumer.ftc.gov/articles/what-know-about-medical-identity-theft (last visited Apr. 14, 2023).

[19] *Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown*, GAO (June 2007), *available at* https://www.gao.gov/assets/270/262904.html (last visited Apr. 14, 2023).

83.     As a result, there is a strong probability that entire batches of stolen information have yet to be dumped on the black market, meaning that Plaintiffs and Class Members are at an increased risk of fraud and identity theft for many years into the future. Thus, Plaintiffs and Class Members have no choice but to vigilantly monitor their accounts for many years to come.

## PLAINTIFFS' AND CLASS MEMBERS' DAMAGES

84.     Plaintiffs and Class Members have been damaged by the compromise of their Private Information, PII, and PHI in the Data Breach.

85.     Plaintiffs' Private Information, including sensitive PII and PHI, was compromised as a direct and proximate result of the Data Breach.

86.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Class Members have suffered an imminent, immediate, and continuing increased risk of harm from fraud and identity theft.

87.     As a direct and proximate result of Defendants' conduct, on information and belief, Class Members have been forced to expend time dealing with the effects of the Data Breach.

88.     Plaintiffs and Class Members face substantial risk of out-of-pocket fraud losses such as loans opened in their names, tax return fraud, utility bills opened in their names, medical fraud, and other identity theft.

89.     Plaintiffs and Class Members face substantial risk of being targeted for future phishing, data intrusion, and other illegal schemes based on their Private Information, as potential fraudsters could use that information to target their schemes at Plaintiffs and Class Members.

90.     Plaintiffs and Class Members also face substantial risk of being victims of medical identity theft.

91.     Plaintiffs and Class Members may also incur out-of-pocket costs for protective measures such as credit monitoring fees, credit report fees, credit freeze fees, and similar costs directly or indirectly related to the Data Breach.

92.     The information that Defendants maintain regarding Plaintiffs and Class Members combined with publicly available information allows nefarious actors to assemble a detailed picture of Plaintiffs and Class Members.

93.     Plaintiffs and Class Members were also damaged via benefit-of-the-bargain damages. Plaintiffs and Class Members overpaid for a service that was intended to be accompanied by adequate data security but was not. Part of the price Plaintiffs and Class Members paid was intended to be used by Defendants to fund adequate data security and protect Plaintiffs' and Class Members' Private Information. Thus, Plaintiffs and the Class Members did not get what they paid for.

94.     Plaintiffs and Class Members have spent and will continue to spend significant amounts of time to monitor their accounts and records for misuse.

95.     Plaintiffs and Class Members have suffered or will suffer actual injury as a direct result of the Data Breach. Many victims suffered of will suffer ascertainable losses in the form of out-of-pocket expenses and the value of their time reasonably incurred to remedy or mitigate the effects of the Data Breach relating to:

        a.   Finding fraudulent charges;

        b.   Canceling and reissuing credit and debit cards;

        c.   Purchasing credit monitoring and identity theft prevention;

        d.   Placing "freezes" and "alerts" with credit reporting agencies;

e.  Spending time on the phone with or at a financial institution to dispute fraudulent charges;

f.  Contacting financial institutions and closing or modifying financial accounts; and

g.  Closely reviewing and monitoring bank accounts and credit reports for unauthorized activity for years to come.

96.  Moreover, Plaintiffs and Class Members have an interest in ensuring that their Private Information, which is believed to remain in the possession of Defendants, is protected from further breaches by the implementation of security measures and safeguards, including but not limited to making sure that the storage of data or documents containing PII and PHI is not accessible online, that access to such data is password-protected, and that such data is properly encrypted.

97.  As a direct and proximate result of Defendants' actions and inactions, Plaintiffs and Class Members have suffered a loss of privacy and either have suffered harm or are at an increased risk of future harm.

## CLASS ALLEGATIONS

98.  Plaintiffs bring this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of themselves and on behalf of all other persons similarly situated (the "Class").

99.  Plaintiffs propose the following Class definitions, subject to amendment as appropriate:

**Nationwide Class:** All individuals in the United States who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.

**Tennessee Subclass:** All residents of Tennessee who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.

**New York Subclass**: All residents of New York who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.

**California Subclass:** All residents of California who had Private Information stolen as a result of the Data Breach, including all who were sent a notice of the Data Breach.

100.    Excluded from each of the above proposed classes are Defendants and their parents or subsidiaries, any entities in which they have a controlling interest, as well as their officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns. Also excluded are any judge to whom this case is assigned as well as their judicial staff and immediate family members.

101.    Plaintiffs reserve the right to modify or amend the definitions of the proposed classes before the Court determines whether certification is appropriate.

102.    Each of the proposed classes meet the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

103.    <u>Numerosity</u>. The Class Members are so numerous that joinder of all members is

impracticable. Though the exact number and identities of Class Members are unknown at this time,

based on information and belief, the Class consists of approximately 250,000 patients whose data

was compromised in the Data Breach. The identities of Class Members are ascertainable through

Defendants' records, Class Members' records, publication notice, self-identification, and other

means.

104.    <u>Commonality</u>. There are questions of law and fact common to the Class, which

predominate over any questions affecting only individual Class Members. These common

questions of law and fact include, without limitation:

    a.   Whether Defendants engaged in the conduct alleged herein;

    b.   Whether Defendants' conduct violated the Tennessee Consumer Protection
        Act, invoked below;

    c.   Whether Defendants' conduct violated the New York General Business
        Law, invoked below;

    d.   Whether Defendants' conduct violated the California Consumer Privacy
        Act ("CCPA") invoked below;

    e.   Whether Defendants' conduct violated California's Unfair Competition
        Law ("UCL") invoked below;

    f.   Whether Defendants' conduct violated California's Confidentiality of
        Medical Information Act ("CMIA") invoked below;

    g.   Whether Defendants' conduct violated California's Consumers Legal
        Remedies Act ("CLRA") invoked below;

h.  Whether Defendants' response to the Data Breach was adequate;

i.  Whether Defendants unlawfully lost or disclosed Plaintiffs' and Class Members' Private Information;

j.  Whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

k.  Whether Defendants' data security systems prior to and during the Data Breach complied with applicable data security laws and regulations;

l.  Whether Defendants' data security systems prior to and during the Data Breach were consistent with industry standards;

m.  Whether Defendants owed a duty to Class Members to safeguard their Private Information;

n.  Whether Defendants breached their duty to Class Members to safeguard their Private Information;

o.  Whether hackers obtained Class Members' Private Information via the Data Breach;

p.  Whether Defendants knew or should have known that their data security systems and monitoring processes were deficient;

q.  What damages Plaintiffs and Class Members suffered as a result of Defendants' misconduct;

r.  Whether Defendants' conduct was negligent;

s.  Whether Defendants' conduct was *per se* negligent;

    t.   Whether Defendants were unjustly enriched;

    u.   Whether Plaintiffs and Class Members are entitled to actual and/or statutory damages;

    v.   Whether Plaintiffs and Class Members are entitled to additional credit or identity monitoring and monetary relief; and

    w.   Whether Plaintiffs and Class Members are entitled to equitable relief, including injunctive relief, restitution, disgorgement, and/or the establishment of a constructive trust.

105.    <u>Typicality</u>. Plaintiffs' claims are typical of those of other Class Members because Plaintiffs' Private Information, like that of every other Class Member, was compromised in the Data Breach.

106.    <u>Adequacy of Representation</u>. Plaintiffs will fairly and adequately represent and protect the interests of Class Members. Plaintiffs' Counsel is competent and experienced in litigating class actions, including data privacy litigation of this kind.

107.    <u>Predominance</u>. Defendants have engaged in a common course of conduct toward Plaintiffs and Class Members in that all of Plaintiffs' and Class Members' data was stored on the same Reventics computer systems and unlawfully accessed in the same way. The common issues arising from Defendants' conduct affecting Class Members set out above predominate over any individualized issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

108.    <u>Superiority</u>. A Class action is superior to other available methods for the fair and efficient adjudication of this controversy. Class treatment of common questions of law and fact is

superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendants. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class member.

109.    Class certification also is appropriate under Fed. R. Civ. P. 23(b)(2). Defendants have acted or have refused to act on grounds generally applicable to the Class so that final injunctive relief or corresponding declaratory relief is appropriate as to the Class as a whole.

110.    Finally, all members of the proposed Class are readily ascertainable. Defendants have access to the names and addresses of Class Members affected by the Data Breach. Class Members have already been preliminarily identified and sent notice of the Data Breach by Reventics.

## CLAIMS FOR RELIEF

### COUNT I
### NEGLIGENCE
### (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE STATE SUBCLASSES)

111.    Plaintiffs restate and reallege the allegations in Paragraphs 1-110 as if fully set forth herein.

112.    Defendants knowingly collected, came into possession of, and maintained Plaintiffs' and Class Members' Private Information, PII, and PHI, and had a duty to exercise

28

reasonable care in safeguarding, securing, and protecting such information from being compromised, lost, stolen, misused, and/or disclosed to unauthorized parties.

113.    Defendants knew or should have known of the risks inherent in collecting the Private Information, PII, and PHI of Plaintiffs and Class Members and the importance of adequate security. Defendants were on notice because they knew or should have known that they would be an attractive target for cyberattacks.

114.    Defendants owed a duty of care to Plaintiffs and Class Members whose Private Information was entrusted to them as a result of the special relationship between Defendants and their patients recognized by laws and regulations, including but not limited to HIPAA, as well as common law. Defendants' duties included, but were not limited to, the following:

    a.   To exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting, and protecting Private Information, PII, and PHI in their possession;

    b.   To protect Private Information, PII, and PHI using reasonable and adequate security procedures and systems that are compliant with industry standards;

    c.   To have procedures in place to prevent the loss or unauthorized dissemination of Private Information, PII, and PHI in their possession;

    d.   To employ reasonable security measures and otherwise protect the Private Information, PII, and PHI of Plaintiffs and Class Members pursuant to the FTCA and HIPAA; and

    e.   To implement processes to quickly detect a data breach and to timely act on warnings about data breaches.

115.    Defendants' duty to use reasonable security measures under HIPAA required Defendants to "reasonably protect" confidential data from "any intentional or unintentional use or disclosure" and to "have in place appropriate administrative, technical, and physical safeguards to protect the privacy of protected health information." 45 C.F.R. § 164.530I(1).

116.    Defendants' duty to use reasonable care in protecting confidential data arose not only as a result of the statutes and regulations described above, but also because Defendants were bound by industry standards to protect confidential Private Information.

117.    Plaintiffs and Class Members were foreseeable victims of any inadequate security practices on the part of Defendants, and Defendants owed them a duty of care to not subject them to an unreasonable risk of harm. It was reasonably foreseeable that Defendants' failure to utilize adequate security measures to protect Class Members' Private Information would result in injury to Class Members. The Data Breach was reasonably foreseeable given the known high frequency of cyberattacks and data breaches in the healthcare industry, as discussed above.

118.    Defendants, through their actions and/or omissions, unlawfully breached their duty to Plaintiffs and Class Members by failing to exercise reasonable care in protecting and safeguarding Plaintiffs' and Class Members' Private Information, PII, and PHI within Defendants' possession.

119.    Defendants, by their actions and/or omissions, breached their duty of care by failing to provide, or acting with reckless disregard for, fair, reasonable, or adequate computer systems and data security practices to safeguard the Private Information, PII, and PHI of Plaintiffs and Class Members.

120.    Defendants breached their duties, and thus were negligent, by failing to use reasonable measures to protect Class Members' Private Information, PII, and PHI. On information and belief, the specific negligent acts and omissions committed by Defendants include, but are not limited to, the following:

        a.  Failing to adopt, implement, and maintain adequate security measures to safeguard Class Members' Private Information, PII, and PHI;

        b.  Failing to adequately monitor the security of their networks and systems;

        c.  Failing to periodically ensure that their email systems maintained reasonable data security safeguards; and

        d.  Allowing unauthorized access to Class Members' Private Information, PII, and PHI.

121.    Plaintiffs' and Class Members' willingness to entrust Defendants with their Private Information, PII, and PHI was predicated on the understanding that Defendants would take adequate security precautions. Moreover, only Defendants had the ability to protect their systems (and the Private Information stored on them) from attack.

122.    Defendants' breach of duties owed to Plaintiffs and Class Members caused Plaintiffs' and Class Members' Private Information, PII, and PHI to be compromised.

123.    As a result of Defendants' ongoing failure to notify Plaintiffs and Class Members regarding exactly what Private Information has been compromised, *i.e.*, only saying in the Data Breach Notification Letter what "information that *may* have been compromised" (emphasis added), Plaintiffs and Class Members have been unable to take the necessary precautions to prevent future fraud and mitigate damages.

124.    Defendants' breaches of duty caused a foreseeable risk to Plaintiffs and Class Members that they would be harmed by suffering from identity theft, loss of control over their Private Information, and/or loss of time and money to monitor their accounts for fraud.

125.    As a result of Defendants' negligence and breach of duties, Plaintiffs and Class Members are in danger of imminent harm in that their Private Information, which is still in the possession of third parties, will be used for fraudulent purposes.

126.    Defendants also had independent duties under the FTCA, state laws, and under HIPAA that required them to reasonably safeguard Plaintiffs' and Class Members' Private Information, PII, and PHI.

127.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class Members have suffered damages and are at imminent risk of further harm.

128.    The injury and harm that Plaintiffs and Class Members suffered was reasonably foreseeable.

129.    The injury and harm that Plaintiffs and Class Members suffered was the direct and proximate result of Defendants' negligent conduct.

130.    Plaintiffs and Class Members have suffered injury and are entitled to damages in an amount to be proven at trial.

131.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT II**
**NEGLIGENCE *PER SE***
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE STATE SUBCLASSES)**

132.    Plaintiffs restate and reallege the allegations in paragraphs 1-131 as if fully set forth herein.

133.    Pursuant to Section 5 of the FTCA, Defendants had a duty to provide fair and adequate computer systems and data security to safeguard Plaintiffs' and Class Members' Private Information, PII, and PHI.

134.    Pursuant to HIPAA, Defendants had a duty to implement reasonable safeguards to protect Plaintiffs' and Class Members' PHI.

135.    Under HIPAA, Defendants had a duty to render electronic PHI into unusable, unreadable, or indecipherable form. *See* 45 C.F.R. § 164.304.

136.    Defendants breached their duties by failing to employ industry-standard cybersecurity measures in order to comply with the FTCA and their obligations under HIPAA, including but not limited to: proper segregation, access controls, password protection, encryption, intrusion detection, secure destruction of unnecessary data, and penetration testing.

137.    Plaintiffs and Class Members are within the class of persons that the FTCA and HIPAA intend to protect.

138.    The FTCA prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice of failing to use reasonable measures to protect Private Information. The FTC publications described above and the industry-standard cybersecurity measures also form part of the basis of Defendants' duty in this regard.

139. Defendants violated the FTCA and HIPAA by failing to use reasonable measures to protect the Private Information of Plaintiffs and Class Members and by not complying with applicable industry standards, as described herein.

140. It was reasonably foreseeable, particularly given the growing number of data breaches of Private Information within the medical industry, that the failure to reasonably protect and secure Plaintiffs' and Class Members' Private Information, PII, and PHI in compliance with applicable laws would result in an unauthorized third-party gaining access to Defendants' networks, databases, and computers that stored or contained Plaintiffs' and Class Members' Private Information.

141. Defendants' violations of the FTCA and HIPAA constitute negligence *per se*.

142. Plaintiffs' and Class Members' Private Information, PII, and PHI constitute personal property that was stolen due to Defendants' negligence, resulting in harm, injury, and damages to Plaintiffs and Class Members.

143. As a direct and proximate result of Defendants' negligence *per se*, Plaintiffs and the Class have suffered, and continue to suffer, injuries and damages arising from the unauthorized access of their Private Information (including PII and PHI) because of the Data Breach, including but not limited to damages from lost time and effort to mitigate the actual and potential impact of the Data Breach on their lives.

144. Defendants breached their duties to Plaintiffs and the Class under these laws by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' Private Information, PII, and PHI.

145.    As a direct and proximate result of Defendants' negligent conduct, Plaintiffs and Class Members have suffered injury and are entitled to compensatory and consequential damages in an amount to be proven at trial.

146.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

## COUNT III
## BREACH OF CONTRACT
## (ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE STATE SUBCLASSES)

147.    Plaintiffs restate and reallege the allegations in paragraphs 1-146 as if fully set forth herein.

148.    Plaintiffs and Class Members entered into a valid and enforceable contract through which Regional One (or another medical provider) provided services to Plaintiffs and Class Members. That contract included promises by Regional One or a different medical provider to secure, safeguard, and not disclose Plaintiffs' and Class Members' Private Information.

149.    Regional One entered into an agreement with Reventics whereby Reventics agreed to secure, safeguard, and not disclose Plaintiffs' and Class Members' Private Information provided to it by Regional One.  Plaintiffs and the Class Members were third party beneficiaries of that agreement because Reventics was supposed to protect their data making Plaintiffs and the Class Members beneficiaries of the contract between Reventics and Regional One.

150.    Regional One's Privacy Policies memorialized the rights and obligations of Regional One and its patients. Patients are promised certain assurances regarding the use and

security of their data. In fact, as part of its Privacy Policies, Regional One explicitly commits to protecting the privacy and security of personal information and promises to never share such information except under specified circumstances. On information and belief, the same is true with regard to Plaintiff Netrosio's and Plaintiff Mujica-Steiner's medical providers that utilized Reventics.

151.    Regional One promised to comply with all HIPAA standards, state and federal law, to ensure that Plaintiffs' and Class Members' PHI was protected, secured, kept private, and not disclosed.

152.    Plaintiffs and Class Members fully performed their obligations under their contracts with Regional One.

153.    However, Reventics did not secure, safeguard, and/or keep private Plaintiffs' and Class Members' PII and PHI, and therefore Reventics breached its contractual obligations to Plaintiffs and Class Members.

154.    Defendants allowed third parties to access, copy, and/or transfer Plaintiffs' and Class Members' PII and PHI without permission. Therefore, Regional One breached the Privacy Policies with Plaintiffs and Class Members and Reventics failed to satisfy the duties it owed to Plaintiffs and the Class Members.

155.    Defendants' failure to satisfy their confidentiality and privacy obligations resulted in  Regional One providing services to Plaintiffs and Class Members that were of a diminished value.

156.    As a result, Plaintiffs and Class Members have been harmed, damaged, and/or injured as described herein.

157.    In addition to monetary relief, Plaintiffs and Class Members are also entitled to injunctive relief requiring Defendants to, *inter alia*, strengthen their data security systems and monitoring procedures, conduct periodic audits of those systems, and provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE STATE SUBCLASSES)**

158.    Plaintiffs restates and realleges the allegations in paragraphs 1-157 as if fully set forth herein.

159.    This Count is pleaded in the alternative to Count III above.

160.    Plaintiffs and Class Members formed an implied contract with Regional One regarding the provision of medical services through their collective conduct.

161.    Through Regional One's provision of medical services, it knew or should have known that it must protect Plaintiffs' and Class Members' confidential Private Information, PII, and PHI in accordance with Defendants' policies, practices, and applicable law, including the FTCA and HIPAA.

162.    As part of receiving services, Plaintiffs and Class Members turned over valuable PII and PHI to Defendants. Accordingly, Plaintiffs and Class Members bargained with Defendants to securely maintain and store their Private Information.

163.    Defendants violated these implied contracts by failing to employ reasonable and adequate security measures to secure Plaintiffs' and Class Members' Private Information.

164.    Plaintiffs and Class Members have been damaged by Defendants' conduct, including by incurring the harms and injuries arising from the Data Breach now and in the future.

## COUNT V
## VIOLATION OF THE TENNESSEE CONSUMER PROTECTION ACT
### (ON BEHALF OF PLAINTIFF TRUSTY AND THE TENNESSEE STATE SUBCLASS)

165. Plaintiff Trusty restates and realleges the allegations in paragraphs 1-164 as if fully set forth herein.

166. Defendants engaged in the conduct alleged in this Complaint in transactions intended to result, and which did result, in the sale of services to patients, including Plaintiffs and members of the Tennessee State Subclass.

167. Defendants engaged in, and their acts and omissions affect, trade and commerce. Defendants' relevant acts, practices and omissions complained of herein were done in the course of Defendants' business of marketing, offering for sale and selling services in the state of Tennessee.

168. The Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.* (the "TCPA") prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the state of Tennessee.

169. In the conduct of its business and providing services to consumers in the state of Tennessee, Regional One's actions were directed at consumers.

170. In the conduct of their business, trade, and commerce, and in the sale of services to consumers in the state of Tennessee, Defendants collected and stored highly personal information, including Private Information belonging to the Tennessee State Subclass.

171. Defendants knew or should have known that Reventics' computer systems and data security practices were inadequate to safeguard the Private Information of the Tennessee State Subclass and that the risk of a data breach was likely.

38

172. As alleged herein, Defendants engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and the sale of services to consumers in the state of Tennessee, in violation of Tenn. Code Ann. § 47-18-104, including but not limited to the following:

a.   failure to maintain adequate computer systems and data security practices to safeguard the Tennessee State Subclass's Private Information;

b.   misrepresenting the material fact that Defendants would maintain adequate data privacy and security practices and procedures to safeguard Tennessee State Subclass Members' Private Information from unauthorized disclosure, release, data breaches, and theft in violation of Tenn. Code Ann. § 47-18-104(b)(5) and (9);

c.   misrepresenting the material fact that Defendants did and would comply with the requirements of relevant federal and state laws and industry standards pertaining to the privacy and security of the Private Information of Tennessee State Subclass Members in violation of Tenn. Code Ann. § 47-18-104(b)(5) and (9);

d.   failing to disclose, and the misrepresenting the material fact, that Defendants' computer systems and data security practices were inadequate to safeguard customers' personal and financial data from theft in violation of Tenn. Code Ann. § 47-18-104(b)(5) and (9); and

    e.   failing to disclose in a timely and accurate manner to members of the Tennessee State Subclass the material fact of the nature and extent of the Data Breach in violation of Tenn. Code Ann. § 47-18-2107(b).

173.    These unfair acts and practices violated duties imposed by law, including but not limited to the FTCA.

174.    By engaging in the conduct delineated above, Defendants have violated the TCPA by, among other things:

    a.   omitting material facts regarding the security of data held by Defendants on behalf of customers in connection with services they receive from Defendants;

    b.   misrepresenting material facts in the furnishing or sale of services to consumers;

    c.   engaging in conduct that is likely to mislead consumers acting reasonably under the circumstances;

    d.   engaging in conduct which creates a likelihood of confusion or of misunderstanding;

    e.   unfair practices that caused or were likely to cause substantial injury to consumers; and/or

    f.   other unfair, deceptive, unconscionable, fraudulent and/or unlawful acts or practices to be shown at trial.

175.    Furthermore, Defendants' failure to secure consumers' Private Information violates the FTCA and therefore violates the TCPA.

176.    Defendants' actions in engaging in the conduct delineated above were negligent, knowing and willful, and/or wanton and reckless with respect to the members of the Tennessee State Subclass.

177.    Had Defendants disclosed to members of the Tennessee State Subclass that their systems were not secure and vulnerable to a data breach, Plaintiffs and Tennessee Statewide Class Members would likely have used a different medical services provider than Regional One.

178.    As a result of Defendants' violations of the TCPA, the Tennessee State Subclass Members are entitled to, and seek, injunctive relief, including but not limited to:

     a.    Ordering that Reventics engage third-party security auditors/penetration testers as well as experienced and qualified internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Reventics systems on a periodic basis, and ordering Reventics to promptly correct any problems or issues detected by such third-party security auditors;

     b.    Ordering that Defendants engage third-party security auditors and experienced and qualified internal security personnel to run automated security monitoring;

     c.    Ordering that Defendants audit, test, and train security personnel regarding new or modified procedures;

     d.    Ordering that Defendants segment customer data by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems;

    e.   Ordering that Defendants purge, delete, and destroy in a reasonably secure manner customer data not necessary for their provision of services;

    f.   Ordering that Defendants conduct regular database scanning and securing checks;

    g.   Ordering that Defendants routinely and continually conduct internal training and education to inform internal security personnel how to identify and contain a data breach when it occurs and what to do in response to a data breach; and

    h.   Ordering Defendants to meaningfully educate their customers about the threats they face as a result of the loss of their financial and personal information to third parties, as well as the steps customers must take to protect themselves.

179.    As a direct and proximate result of the unconscionable, unfair, and deceptive acts or practices of Defendants alleged herein, the Tennessee State Subclass Members seek relief under Tenn. Code Ann. §§ 47-18-109 and 47-18-2107(h), including, but not limited to, actual damages, treble damages for each willful or knowing violation, injunctive relief, and attorneys' fees and costs.

**COUNT VI**
**VIOLATION OF THE NEW YORK GENERAL BUSINESS LAW § 349**
**(ON BEHALF OF PLAINTIFF NETROSIO AND THE NEW YORK STATE SUBCLASS)**

180.    Plaintiff Netrosio restates and realleges the allegations in paragraphs 1-179 above and hereafter as if fully set forth herein.

181.    This Count is brought on behalf of Plaintiff Netrosio and the New York State Subclass.

182.    New York's General Business Law § 349 ("GBL § 349") prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

183.    In its provision of services in the State of New York, Reventics conducts business and trade within the meaning and intendment of GBL § 349.

184.    Plaintiff Netrosio and the New York State Subclass Members are consumers who conducted transactions in the state of New York that involved Reventics.

185.    By the acts and omissions alleged herein, Reventics has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, the expectation that Reventics would implement and maintain reasonable protections consistent with the law, industry standards and best practices in cybersecurity, when in fact Reventics did not.

186.    The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the ability and measures taken by Reventics to safeguard consumer PII and PHI, and to induce consumers to enter into transactions with Reventics.

187.    By reason of this conduct, Reventics engaged in deceptive conduct in violation of GBL § 349.

188.    Reventics' actions are the direct, foreseeable, and proximate cause of the damages that Plaintiff Netrosio and the New York State Subclass Members have sustained due to the Data Breach.

189.    As a result of Reventics' violations, Plaintiff Netrosio and the New York State Subclass Members have suffered damages because: (a) they would not have provided their PII and

PHI to their medical providers had they known that Reventics would not use "reasonable security measures, including physical, administrative, and technical safeguards to help us protect your information from unauthorized access, use and disclosure"; and (b) Plaintiff Netrosio and the New York State Subclass Members must spend considerable time and expenses dealing with the effects of the Data Breach and are now at greater risk for future harm stemming from the Data Breach.

190.     On behalf of herself and the New York State Subclass Members, Plaintiff Netrosio seeks to recover actual damages or fifty dollars, whichever is greater, treble damages, and reasonable attorneys' fees.

### COUNT VII
### VIOLATION OF THE CALIFORNIA CONSUMER PRIVACY ACT, CAL. CIV. CODE § 1798, *ET SEQ.* (ON BEHALF OF PLAINTIFF MUJICA-STEINER AND THE CALIFORNIA STATE SUBCLASS)

191.     Plaintiff Mujica-Steiner restates and realleges the allegations in paragraphs 1-190 as if fully set forth herein.

192.     Reventics engaged in unfair and deceptive acts and practices in violation of the California Consumer Privacy Act ("CCPA").

193.     In 2018, the California Legislature passed the CCPA, giving consumers broad protections and rights intended to safeguard their personal information. Among other things, the CCPA imposes an affirmative duty on certain businesses that maintain personal information about California residents to implement and maintain reasonable security procedures and practices that are appropriate to the nature of the information collected.

194.     Reventics is subject to the CCPA and failed to implement such procedures which resulted in the Data Breach.

195.    Additionally, earlier this year, the CCPA was amended to provide new rights to consumers including the right to limit the use and disclosure of sensitive personal information collected for them. Reventics failed to comply with this as well.

196.    Section 1798.100(e) of the CCPA states: "A business that collects a consumer's personal information shall implement reasonable security procedures and practices appropriate to the nature of the personal information to protect the personal information from unauthorized or illegal access, destruction, use, modification, or disclosure . . . ."

197.    Section 1798.150(a)(1) of the CCPA provides: "Any consumer whose nonencrypted or nonredacted personal information, as defined [by the CCPA] is subject to an unauthorized access and exfiltration, theft, or disclosure as a result of the business' violation of the duty to implement and maintain reasonable security procedures and practices appropriate to the nature of the information to protect the personal information may institute a civil action for" statutory or actual damages, injunctive or declaratory relief, and any other relief the court deems proper.

198.    Plaintiff Mujica-Steiner is a "consumer" as defined by Cal. Civ. Code § 1798.140(g) because she is a natural person residing in the state of California.

199.    Reventics meets the definition of a "business" as defined by Civ. Code § 1798.140(c) because it is a corporation that does business in the state of California and have total annual revenues in excess of $25,000,000.

200.    The Data Breach included "personal information" within the meaning of the CCPA.

201. Through the Data Breach, Plaintiff Mujica-Steiner's and California State Subclass Members' Private Information was accessed without authorization, exfiltrated, and stolen in a nonencrypted and/or nonredacted format.

202. The Data Breach occurred as a result of Reventics' failure to implement and maintain reasonable security procedures and practices appropriate to the nature of the information.

203. Plaintiff Mujica-Steiner has sent written notice to Reventics pursuant to Cal. Civ. Code § 1798.150(b)(1) identifying the specific provisions of the CCPA Plaintiff Mujica-Steiner alleges they have violated or are violating. Although a cure is not possible under the circumstances, if (as expected) Reventics is unable to cure or does not cure the violations within 30 days of Plaintiff Mujica-Steiner's letters, Plaintiff Mujica-Steiner will amend this Complaint to pursue actual or statutory damages as permitted by Cal. Civ. Code § 1798.150(a)(1)(A).

204. As a result of Reventics' failure to implement and maintain reasonable security procedures and practices that resulted in the Data Breach, Plaintiff Mujica-Steiner and the California State Subclass Members seek actual pecuniary damages, injunctive and declaratory relief, and any other relief as deemed appropriate by the Court.

**COUNT VIII**
**VIOLATION OF THE CALIFORNIA UNFAIR COMPETITION LAW,**
**CAL. BUS. PROF. CODE § 17200, *ET SEQ.***
**(ON BEHALF OF PLAINTIFF MUJICA-STEINER AND THE CALIFORNIA STATE SUBCLASS)**

205. Plaintiff Mujica-Steiner restates and realleges the allegations in paragraphs 1-204 as if fully set forth herein.

206. Reventics violated the California Unfair Competition Law ("UCL"), Cal. Bus. Prof. Code § 17200, *et seq.*, by engaging in unlawful, unfair or fraudulent business acts and practices

and unfair, deceptive, untrue or misleading advertising that constitute acts of "unfair competition" as defined in the UCL, including, but not limited to, by representing that they would maintain adequate data privacy and security practices and procedures to safeguard California State Subclass Members' PII and PHI from unauthorized disclosure, release, data breach, and theft; representing and advertising that they would and did comply with the requirement of relevant federal and state laws relating to privacy and security of California State Subclass Members' Private Information; omitting, suppressing, and concealing the material fact of the inadequacy of the privacy and security protections for the Private Information; and collecting California State Subclass Members' Private Information without adequately protecting or storing their Private Information.

207.    As a direct and proximate result of Reventics' unfair and unlawful practices and acts, California State Subclass Members were injured and lost money or property, including but not limited to, overpayments that Reventics received to maintain adequate security measures but did not, the loss of their legally protected interest in the confidentiality and privacy of their Private Information, PII, and PHI, and additional losses described above.

208.    Reventics knew or should have known that its administrative and data security measures were inadequate to safeguard California Subclass Members' Private Information and that the risk of a data breach or unauthorized access was likely. Reventics had the resources to secure and/or prepare for protecting its patients' Private Information, PII, and PHI in a data breach. Reventics' actions in engaging in the above unfair, unlawful, and deceptive acts and practices were negligent, knowing and willful, and/or wanton and reckless with respect to Plaintiffs Mujica-Steiner's and California Subclass Members' rights.

209.    Plaintiff Mujica-Steiner seeks relief under the UCL, including restitution to California Subclass Members of money or property that Defendants may have acquired by means of their deceptive, unlawful, and unfair business practices, declaratory relief, attorney fees, costs and expenses (pursuant to Cal. Code Civ. § 1021.5), and injunctive or other equitable relief.

210.    Defendants did not inform patients that they failed to properly safeguard their Private Information, PII, and PHI, thus misleading California State Subclass Members in violation of § 17200, *et seq*.

211.    Had California State Subclass Members known of Reventics' failure to maintain adequate security measures to protect their Private Information, California State Subclass Members would not have entrusted their Private Information, PII, and PHI to Reventics.

212.    California State Subclass Members were injured because: (a) they would not have paid for services had they known the true nature and character of Reventics' data security practices; (b) California State Subclass Members would not have entrusted their Private Information to Reventics in the absence of promises that Reventics would keep their information reasonably secure; and (c) California State Subclass Members would not have entrusted their Private Information to Reventics in the absence of the promise to monitor their computer systems and networks to ensure that they adopted reasonable data security measures.

213.    As a result, California State Subclass Members have been damaged in an amount to be proven at trial.

214.    On behalf of herself and other California State Subclass Members, Plaintiff Mujica-Steiner seeks to enjoin the unlawful acts and practices described herein and to recover actual damages, treble damages, and reasonable attorneys' fees.

**COUNT IX**
**VIOLATION OF THE CALIFORNIA CONFIDENTIALITY OF MEDICAL INFORMATION ACT, CAL. CIV. CODE § 56, *ET SEQ.***
**(ON BEHALF OF PLAINTIFF MUJICA-STEINER AND THE CALIFORNIA STATE SUBCLASS)**

215.     Plaintiff Mujica-Steiner restates and realleges the allegations in paragraphs 1-214 as if fully set forth herein.

216.     Reventics is subject to the California Confidentiality of Medical Information Act ("CMIA") because it is a "business organized for the purpose of maintaining medical information . . . in order to make the information available to an individual or provider of health care . . ." under Cal. Civ. Code § 56.06.

217.     Plaintiff Mujica-Steiner is a "[p]atient" as that term is defined in Cal. Civ. Code § 56.05(k). California State Subclass Members are also patients under that provision.

218.     As a direct result of Reventics' unlawful actions and inactions, it disclosed "medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization" by allowing third-party criminal hackers to access and exfiltrate Plaintiff Mujica-Steiner's and California State Subclass Members' PHI in violation of Cal. Civ. Code § 56.10(a).

219.     Reventics breached the confidentiality of Plaintiffs' and Class Members' PHI in violation of Cal. Civ. Code § 56.101(a) by allowing unauthorized individuals to access Plaintiffs' and California Subclass Members' PHI.

220.     Plaintiff Mujica-Steiner and California Subclass Members have suffered actual injury and are entitled to damages under Cal. Civ. Code §§ 56.35 and 56.36 in an amount to be proven at trial.

**COUNT X**
**UNJUST ENRICHMENT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR**
**ALTERNATIVELY THE STATE SUBCLASSES)**

221.    Plaintiffs restate and reallege the allegations in paragraphs 1-220 as if fully set forth herein.

222.    This Count is pleaded in the alternative to Counts III and IV above.

223.    Plaintiffs and Class Members conferred a benefit on Defendants by paying for services that should have included data and cybersecurity protection to protect their Private Information, which Plaintiffs and Class Members did not receive.

224.    Defendants retained the benefits of their unlawful conduct including the amounts received for data and cybersecurity practices that they did not provide. Due to Defendants' conduct alleged herein, it would be unjust and inequitable under the circumstances for Defendants to be permitted to retain the benefit of their wrongful conduct.

225.    Plaintiffs and Class Members are entitled to full refunds, restitution, and/or damages from Defendants, and/or an order of this Court proportionally disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct. This can be accomplished by establishing a constructive trust from which Plaintiffs and Class Members may seek restitution or compensation may be created.

226.    Plaintiffs and Class Members may not have an adequate remedy at law against Defendants, and accordingly, they plead this claim for unjust enrichment in addition to, or in the alternative to, other claims pleaded herein.

**COUNT XI**
**DECLARATORY JUDGMENT**
**(ON BEHALF OF PLAINTIFFS AND THE NATIONWIDE CLASS OR ALTERNATIVELY THE STATE SUBCLASSES)**

227.     Plaintiffs restate and reallege the allegations in paragraphs 1-226 as if fully set forth herein.

228.     Under the Declaratory Judgment Act, 28 U.S.C. § 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts, such as here, that are tortious and violate the terms of the federal and state statutes described in this Complaint.

229.     Defendants owe a duty of care to Plaintiffs and Class Members, which required them to adequately secure Private Information.

230.     Defendants still possess PHI, PII, and Private Information regarding Plaintiffs and Class Members.

231.     Plaintiffs allege that Defendants' data security measures remain inadequate. Furthermore, Plaintiffs continues to suffer injury as a result of the compromise of their PHI, PII, and Private Information and the risk remains that further compromises of their PHI, PII, and Private Information will occur in the future.

232.     Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

a.     Defendants owe a legal duty to secure patients' Private Information under the common law and Section 5 of the FTCA;

b.     Defendants' existing security measures do not comply with their explicit or implicit contractual obligations and duties of care to provide reasonable

security procedures and practices that are appropriate to protect Private Information; and

c. Defendants continue to breach this legal duty by failing to employ reasonable measures to secure patients' Private Information.

233. This Court should also issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with legal and industry standards to protect their patients' Private Information, including the following:

a. Order Defendants to provide lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members.

b. Order that to comply with Defendants' explicit or implicit contractual obligations and duties of care, Defendants must implement and maintain reasonable security measures, including, but not limited to:

i. engaging third-party security auditors/penetration testers as well as internal security personnel to conduct testing, including simulated attacks, penetration tests, and audits on Defendants' systems on a periodic basis, and ordering Defendants to promptly correct any problems or issues detected by such third-party security auditors;

ii. engaging third-party security auditors and internal personnel to run automated security monitoring;

iii. auditing, testing, and training their security personnel regarding any new or modified procedures;

      iv.  segmenting their user applications by, among other things, creating firewalls and access controls so that if one area is compromised, hackers cannot gain access to other portions of Defendants' systems;

      v.  conducting regular database scanning and security checks;

      vi.  routinely and continually conducting training and education to inform security personnel how to identify and contain a data breach when it occurs and what to do in response to a data breach; and

      vii.  meaningfully educating their patients about the threats they face with regard to the security of their Private Information, PII, and PHI, as well as the steps patients must take to protect themselves.

234.    If an injunction is not issued, Plaintiffs and Class Members will suffer irreparable injury and lack an adequate legal remedy to prevent another data breach. The risk of another such breach is real, immediate, and substantial. If another breach occurs, Plaintiffs and Class Members will not have an adequate remedy at law because many of the resulting injuries are not readily quantifiable.

235.    The hardship to Plaintiffs and Class Members if an injunction does not issue exceeds the hardship to Defendants if an injunction is issued. Plaintiffs and Class Members will likely be subjected to substantial identity theft, medical identity theft, and other related damages. On the other hand, the cost of Defendants' compliance with an injunction requiring reasonable prospective data security measures is relatively minimal, and Defendants have a pre-existing legal obligation to employ such measures.

236.     Issuance of the requested injunction will not disserve the public interest. To the contrary, such an injunction would benefit the public by preventing a subsequent data breach at Defendants, thus preventing future injury to Plaintiffs and Class Members whose Private Information would be further compromised.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes described above, seek the following relief:

a.  An order certifying this action as a Class action under Fed. R. Civ. P. 23, defining the Classes as requested herein, appointing the undersigned as Class counsel, and finding that Plaintiffs are proper representatives of the Classes requested herein;

b.  Judgment in favor of Plaintiffs and Class Members, awarding them appropriate monetary relief, including actual damages, statutory damages, equitable relief, restitution, disgorgement, and statutory costs;

c.  An order providing injunctive and other equitable relief as necessary to protect the interests of the Classes as requested herein;

d.  An order instructing Defendants to purchase or provide funds for lifetime credit monitoring and identity theft insurance to Plaintiffs and Class Members;

e.  An order requiring Defendants to pay the costs involved in notifying Class Members about the judgment and administering the claims process;

    f.   A judgment in favor of Plaintiffs and Class Members, awarding them prejudgment and post-judgment interest, reasonable attorneys' fees, costs, and expenses as allowable by law; and

    g.   An award of such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs demand a trial by jury on all triable issues.

DATED:  April 20, 2023.           Respectfully submitted,


By: */s/ Mark E. Saliman*
Mark E. Saliman
**SALIMAN LAW, LLC**
3900 E. Mexico Ave., Suite 300
Denver, CO 80210
Tel: (720) 907-7652
E: mark@salimanlaw.com

Mason A. Barney (*pro hac vice* to be filed)
Steven D. Cohen (*pro hac vice* to be filed)
**SIRI & GLIMSTAD LLP**
745 Fifth Avenue, Suite 500
New York, New York 10151
Tel: (212) 532-1091
E: mbarney@sirillp.com
E: scohen@sirillp.com

***Counsel for Plaintiffs and the Proposed Class***